# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 236 |
| v. | ) |
| | ) Magistrate Judge Jeffrey Cummings |
| NANCY A. BERRYHILL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Michael B. ("Claimant")[1] brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner") that denied Claimant's claim for Disability Insurance Benefits ("DIBs") under 42 U.S.C. §§ 416(i) and 423(d) of the Social Security Act. The Commissioner has brought a cross-motion for summary judgment seeking to uphold its decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 138(c)(3). For the reasons stated below, Claimant's motion for summary judgment [16] is denied and the Commissioner's motion for summary judgment [27] is granted.

## I. BACKGROUND

### A. Procedural History

On June 13, 2014, Claimant filed a Title II DIBs application alleging a disability onset date of May 27, 2014. (R. 93). His claim was denied initially on October 23, 2014 and upon

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, only the claimant's first name shall be listed in the caption. Thereafter, we shall refer to Michael B. as Claimant.

1

reconsideration on May 30, 2015. (R. 104, 119). On January 26, 2017, an Administrative Law Judge ("ALJ") issued a written decision denying benefits to Claimant. (R. 38-46). The Appeals Council denied review on November 13, 2017, making the ALJ's decision the Commissioner's final decision. (R. 1). *Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Claimant subsequently filed this action in District Court.

**B.     Medical Evidence**

Claimant suffers from obesity, esophagus disease, cirrhosis of the liver, lumbar degenerative disc disease, and cervical spondylosis. (R. 40). Only Claimant's cervical and lumbar spine issues are relevant for the purpose of this case.[2]

**1.     Evidence From Claimant's Treatment History**

Claimant complained of neck pain in April 2014 when he sought treatment with Dr. Pranjal Shah. Dr. Shah diagnosed cervical strain, rotator cuff tendinitis, and cirrhosis of the liver. (R. 485). A May 28, 2014 MRI revealed a left-sided C3-C4 disc herniation and a mild far-right herniation at C6-C7. The MRI also showed a small vertebral canal from C2-C3 through C4-C5. (R. 417). Plaintiff again complained of acute neck pain on June 2 and June 30, 2014. Dr. Shah prescribed the anti-inflammatory medication Etodolac. (R. 551). Plaintiff then sought treatment with pain specialist Dr. Amish Patel. Dr. Patel found that Claimant's neck pain was consistent with disc herniation and bone spurring at C6-C7 and diagnosed cervical spondylosis, cervical radiculopathy, cervicalgia, and myalgia. (R. 765-66). He prescribed steroid injections and physical therapy. (R. 766).

---

[2] Claimant also suffers from bilateral shoulder pain and underwent surgery on his left shoulder on July 10, 2014. (R. 402). The ALJ did not find that Claimant's shoulder problems constituted a severe impairment, however, and Claimant does not dispute that conclusion. Claimant also fails to challenge any of the ALJ's findings concerning obesity, liver cirrhosis, or esophagus disease.

Claimant also sought treatment for lower back pain. A December 9, 2014 MRI showed moderate spinal stenosis at L2. (R. 676). Disc protrusion was present at L5-S1 with mild foraminal narrowing. (R. 676). Follow-up treatment with Dr. Michael Zindrick in March 2015 and with Dr. Patel in May 2015 showed that Claimant continued to suffer from pain in his neck and lower back. Dr. Patel recommend a L2-L6 lumbar medial branch block and trigger point injections. (R. 907). Claimant continued to treat with Dr. Patel from July through November 2015 for ongoing neck and back pain and underwent the lumbar medial branch block on November 25, 2015. (R. 964).

2.  **Evidence from Agency Consultants**

On October 14, 2014, Claimant was examined by consulting expert Dr. James Elmes. Dr. Elmes' noted that Claimant had upper extremity strength of 5/5 on the right side and 4/5 strength on the left. Claimant's lower extremity strength was 5/5 bilaterally. (R. 638). Range of motion was normal for most joints except for specific deficiencies that were noted in examination charts attached to Dr. Elmes' report. (R. 639). A slight reduction in range of motion was noted for Claimant's spine but no atrophy or midline tenderness was noted. (R. 639). Dr. Elmes diagnosed, in relevant part, nonspecific neck pain, a central and left herniated cervical disc at C3-C4, and mild cervical stenosis at C4, C5, C6, and C7. (R. 639).

On October 23, 2014, non-examining expert Dr. Quan Nguyen issued a report for the Social Security Administration. He determined that Claimant could perform a reduced range of light work. Claimant could occasionally lift or carry up to 20 pounds and frequently lift 10 pounds. He could sit up to six hours a day and also stand and walk for the same period of time. (R. 99). However, Dr. Nguyen also placed several restrictions on Claimant's work capacity. Claimant could occasionally (meaning up to one-third of the time) crouch, kneel, and crawl but

could frequently (meaning up to two-thirds of the time) climb ramps, balance, and stoop. Claimant could never climb ladders, ropes, or scaffolds. (R. 99-100). Dr. LaVerne Barnes confirmed Dr. Nguyen's findings on reconsideration on April 29, 2015. (R. 116).

### C. Evidence From Claimant's Testimony

Claimant appeared at an administrative hearing held on September 19, 2016. He told the ALJ that he experienced pain every day at a level that Claimant rated as a four to five out of ten. (R. 67). Some days were worse than others with Claimant's pain reaching nine out of ten up to five days a month. (R. 79). He stated that he could only walk four blocks without pain and would then have to lie down because of back pain. (R. 71). He can stand for 30 minutes, sit for 20 minutes at a time, and lift up to 20 pounds. (R. 72). Claimant told the ALJ that he experienced debilitating headaches at least once or twice a day that caused him to lie down up to 75 percent of the day. (R. 84).

### D. The Vocational Expert's Testimony

The ALJ called a vocational expert ("VE") to testify at the administrative hearing. The ALJ described to the VE a hypothetical individual with Claimant's residual functional capacity ("RFC") and asked if any work would be available to such a person. The VE described three jobs that existed in the national economy and identified their corresponding identification numbers in the Dictionary of Occupational Titles ("DOT"):[3] (1) an office helper (DOT # 239.567-010), (2) a routing clerk (DOT # 222.587-038), and (3) a checker (DOT # 222.687-010). (R. 89).

---

[3] "The Dictionary, published by the Department of Labor, gives detailed physical requirements for a variety of jobs. The Social Security Administration has take 'administrative notice' of the DOT." *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (citing 20 C.F.R. § 416.966(d)(1)). The DOT was last revised in 1991 and been criticized as "outdated." *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018). The Social Security Agency will replace the DOT in 2020 with an Occupational Information System. *Id*.

### E. The ALJ's Decision

On January 26, 2017, the ALJ issued a decision finding that Claimant was not disabled. Applying the five-step sequential evaluation that governs disability cases, the ALJ found at Step 1 that Claimant had not engaged in substantial gainful activity since his alleged onset date of May 27, 2014. (R. 40). His severe impairments at Step 2 included lumbar degenerative disc disease, cervical spondylosis, cirrhosis of the liver, obesity, and esophagus disease. (R. 40). In addition, Claimant also suffered from the non-severe impairment of bilateral carpal tunnel syndrome. (R. 40). The ALJ concluded at Step 3 that none of these impairments met or medically equaled a listed impairment either singly or in combination with one another. (R. 40-41).

Before moving to Step 4, the ALJ found that the record did not fully support Claimant's statements about the restrictions imposed by his symptoms. (R. 42). The ALJ also determined that Claimant had the RFC to perform light work as that exertional level is defined in 20 C.F.R. § 404.1567(b). The ALJ added several restrictions to that finding, including the limitation that Claimant could frequently reach with his bilateral upper extremities, balance, stoop, kneel, and climb ramps and stairs. Claimant could only occasionally crouch, crawl, and climb ladders, ropes, and scaffolds. (R. 41). Based on these conclusions, the ALJ determined at Step 4 that Claimant could not perform his past relevant work as a machine operator. (R. 44-45). Based on the VE's testimony, the ALJ found at Step 5 that jobs existed in the national economy that a person with Claimant's RFC could perform. The ALJ therefore concluded that Claimant was not disabled. (R. 45-46).

## II. LEGAL ANALYSIS

### A. The Social Security Administration Standard

In order to qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 4243(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. § 404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). It then determines at step two whether the claimant's physical or mental impairment is severe and meets the twelve-month duration requirement noted above. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, the individual is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. § 404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines his or her exertional and non-exertional capacity to work. The SSA then determines at step four whether the claimant is able to engage in any of his past

relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if he or she can do work that is available under this standard. 20 C.F.R. § 404.1520(a)(4)(v).

### B. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1983). A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts or by making independent symptom evaluations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## III. DISCUSSION

Claimant argues that the ALJ's decision requires remand because substantial evidence does not support the ALJ's RFC assessment. The RFC addresses the maximum work-related activities that a claimant can perform despite the limitations that stem from his or her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The task of assessing a claimant's RFC is reserved to the Commissioner instead of to a medical expert. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do." *Id*. Such evidence includes the claimant's medical history; the effects of treatments that he or she has undergone; the reports of activities of daily living ("ADL"); medical source statements; and the effects of the claimant's symptoms. SSR 96-8p, 1996 WL 374184, at *5 (1996).[4]

The administrative record contains two functional assessments of Claimant's ability to work issued by the state-agency experts Dr. Nguyen and Dr. Barnes. Claimant did not provide a treating source opinion, and no consulting expert assessed Claimant's RFC.[5] The ALJ assigned great weight to the state-agency experts and adopted their finding that Claimant could perform a reduced range of light work. However, the ALJ's RFC assessment differed from Dr. Nguyen's and Dr. Barnes' conclusions on two issues. Dr. Nguyen and Dr. Barnes found that Claimant

---

[4] Social Security Rulings "are interpretive rules intended to offer guidance to agency adjudicators." *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999). They do not have the force of law or a regulation, though they are binding on the SSA. *Id*.

[5] Claimant suggests that the absence of a treating source opinion on the RFC issue supports his claim that the ALJ failed to develop the record properly. (Dckt. # 26 at p. 15). Treating source opinions, however, are ordinarily submitted to the Commissioner by claimants as part of the burden of demonstrating disability. *See Thorps v. Astrue*, 873 F.Supp.2d 995, 1004 (N.D.Ill. 2012) ("The plaintiff bears the burden of proof through step four[.]").

could kneel occasionally; the ALJ concluded that he had a greater ability to kneel and could do so frequently.  Dr. Nguyen and Dr. Barnes also stated that Claimant could never climb ladders, ropes, and scaffolds; the ALJ found that he could climb occasionally. (R. 41).  Claimant argues that the ALJ did not explain the reasons that led him to find that Claimant was less restricted in these areas than the state-agency experts stated.  According to Claimant, the ALJ should have developed the record more fully by taking actions such as ordering a new consultative examination or calling a medical expert to testify.

The Court agrees that the ALJ did not adequately explain how he went about finding that Claimant could kneel frequently and climb ladders occasionally throughout the workday.  That raises concerns because an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7.  Indeed, the Commissioner concedes that the ALJ's failure to address his reasoning on Claimant's ability to kneel and climb ladders, ropes, and scaffolds is erroneous.  (Dckt. # 27 at p. 6).

That said, the Commissioner points out that none of the jobs that the ALJ stated at Step 5 that Claimant could do require him to climb or kneel according the DOT's inventory of these jobs' requirements.  The DOT's description of an office helper, for instance, states "Climbing: Not Present" and "Kneeling:  Not Present."  *See* Office Helper, DOT # 239.567-010, 1991 WL 672232.  The DOT's descriptions of router and checker jobs contain the same criteria.  *See* Router, DOT # 222.587-038, 1991 WL 672123 (stating "Climbing:  Not Present," "Kneeling: Not Present"); Checker, DOT # 222.687-010, 1991 WL 672130 (stating "Climbing:  Not Present," "Kneeling:  Not Present").  The Commissioner argues that, because Claimant would have the RFC to perform the jobs the ALJ identified even if the ALJ had adopted all of Dr.

9

Nguyen's and Dr. Barnes' RFC findings, any error that he committed by failing to explain the basis of his reasoning is harmless.

It is well established that Social Security disability cases are subject to a harmless error analysis. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009) (addressing obesity). In order to determine that an ALJ's oversight of an issue is harmless, a court must find more than that the ALJ *might* have reached the same result if he examined the record more carefully; rather, a court must have a high level of certainty that would be the case. "If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva*, 628 F.3d at 353. Like an ALJ's conclusions, the failure to explain the basis of an ALJ's findings is also subject to a harmless error analysis. *Mueller v. Colvin*, 524 Fed.Appx. 282, 285 (7th Cir. 2013) ("But the absence of a rationale may constitute harmless error if the agency's decision is overwhelmingly supported by the record and thus remand would be pointless.").

The Court agrees with the Commissioner that the ALJ committed harmless error by not explaining why Claimant could climb occasionally and kneel frequently. Since the jobs identified at Step 5 do not require any kneeling or climbing, Claimant would be able to work as a router, office helper, or checker regardless of whether he could kneel frequently and climb occasionally – as the ALJ found – or could only kneel occasionally and never climb – as Dr. Nguyen and Dr. Barnes found. Were the ALJ to restate his reasoning for the RFC conclusions, therefore, he would reach the same disability finding as he did here because a claimant who can perform jobs that are within his RFC and are available in significant numbers at Step 5 of the

10

sequential analysis must be found "not disabled." 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work [at Step 5], we will find that you are not disabled.").

The ALJ was entitled to rely on the opinions of state-agency experts like Dr. Nguyen and Dr. Barnes.[6] *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). In order to overcome the Commissioner's argument, Claimant would need to show either (1) that the ALJ erred in giving great weight to the state-agency reports or (2) that substantial evidence does not support Dr. Nguyen's and Dr. Barnes' RFC assessments. Claimant does not make either of these claims, however, leaving both the expert reports and the ALJ's assessment of them unchallenged. In fact, Claimant does not even address the Commissioner's harmless error argument in his response to the Commissioner's motion and has therefore waived this critical issue. *See C & N Corp. v. Kane*, 756 F.3d 1024, 1026 (7th Cir. 2014) (finding that a nonmovant's failure to make an argument in response to a summary judgment motion constitutes a waiver); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Even if Claimant had not waived the issue, he has still failed to show why remand is necessary under the facts of this case. Claimant states in a series of abbreviated claims that the ALJ should have developed the record more fully, called an expert medical witness to testify at the hearing, ordered an additional consultative exam, or perhaps have contacted Claimant's

---

[6] Claimant summarily claims that the ALJ did not consider "subsequent treatment" that post-dated the state-agency reports. (Dckt. # 26 at p. 15). In support, Claimant cites a July 27, 2015 report from Dr. Pranjal Shah stating that he made a steroid injection in Claimant's neck at C5. (R. 941). Claimant overlooks that the ALJ considered a number of Claimant's medical consultations that took place after the state-agency doctors issued their reports, including a July 20, 2015 with Dr. Shah himself. (R. 43). Moreover, Claimant does not explain how later records would have led the ALJ to a different conclusion. The Court is therefore unable to evaluate Claimant's bare reference to "subsequent treatment" let alone find that reversal of the ALJ's decision is warranted based on this contention. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments . . . are waived.").

treating sources. All of these claims share the assumption that the ALJ somehow overstepped his authority by not seeking expert advice to deduce a proper RFC from the record. However, the ALJ in this case *did* have expert medical advice in the form of the state-agency reports that he assigned great weight. Moreover, Claimant is incorrect in suggesting that the ALJ was required to rely on a specific report that matches his RFC conclusions on each point. The RFC is a legal – and not a medical – decision that is exclusively within the ALJ's authority to make. *See Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide.") (citing 20 C.F.R. § 404.1527(d)); *see also Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (stating that "the ALJ is not required to rely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians"); *Titterington v. Barnhart*, 174 Fed.Appx. 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."). As such, the critical question is not whether the ALJ's RFC conclusions match a medical expert's opinion item-by-item but whether substantial evidence supports what the ALJ ultimately concluded about the claimant's RFC.

Citing *Mansur v. Colvin*, No. 3:13 C 1378, 2015 WL 2370731 (N.D.Ind. May 18, 2015), Claimant argues that the supporting testimony of an expert was necessary to interpret his test results and suggests that the ALJ "played doctor" by assessing the RFC without expert guidance. However, *Mansur* is inapposite. In *Mansur*, three state-agency doctors found that the claimant could only perform sedentary work. The ALJ gave these opinions little weight and instead interpreted medical information such as neurological tests and "a mosaic of data" on his own to find that the claimant could carry out light work. *Id*. at *8-10. Contrary to those facts, the ALJ in this case *adopted* the state-agency reports and their conclusions that Claimant could perform a

12

reduced range of light work. Claimant's motion repeatedly overlooks that the state-agency doctors had *already* reviewed the tests and data that the ALJ cited in his decision to find that Claimant is not disabled. Unlike the ALJ in *Mansur*, therefore, the ALJ relied on expert medical assessments of Claimant's condition throughout his decision to assess Claimant's RFC.

The point can be illustrated by Claimant's allegation that the ALJ "played doctor" by improperly interpreting the results of a December 9, 2014 MRI of his lumbar spine. Claimant notes, for example, that the ALJ stated that the MRI only showed "'moderate' central spinal stenosis" and a "'slight' posterior disc protrusion." (Dckt. # 26 at p. 6; R. 42). Contrary to Claimant's allegation, the ALJ did not "interpret" the December 2014 MRI or "play doctor" by citing it. Radiologist Dr. Geoffrey Chun reviewed Claimant's MRI and stated that it showed "a small spinal canal" at L2 with "moderate" stenosis, a "slight" disc protrusion at L3, and "mild" facet joint hypertrophy at L4-L5. (R. 675). The ALJ accurately cited Dr. Chun's conclusions at some length as part of his review of Claimant's record including the MRI. (R. 42-43). That does not amount to an interpretation of the record – Dr. Chun had already done that – but merely a summary of what the doctor said that the MRI revealed. An ALJ does not play doctor when he summarizes an expert's conclusions. *See Brown v. Barnhart*, 298 F.Supp.2d 773, 791 (E.D.Wis. 2004) ("However, the ALJ did not interpret the MRI; she simply paraphrased the impression of [the doctor] who reviewed the MRI . . . . While ALJs are forbidden to play doctor and make their own medical findings, they must discuss and weigh the medical evidence.").

Claimant further argues that the ALJ erred by using the December 2014 MRI to discount what Claimant said about his pain-related limitations. The Court disagrees that the ALJ committed any error in evaluating Claimant's testimony. SSR 16-3p, which governs this issue, instructs ALJs that they should consider objective medical evidence like the MRIs that the ALJ

13

in this case cited. *See* SSR 16-3p, 2017 WL 5180304, at *5 (2017) ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."). The ALJ might have erred had he limited his discussion to objective tests that were at odds with what Claimant said about his symptoms. *See id.* (stating that an ALJ may not disregard a claimant's pain-related testimony "solely because the objective medical evidence does not substantiate" the claimant's allegations). However, the ALJ did not do so. He also noted – correctly – that Claimant only showed a "trace amount of discomfort" on October 2014; had a "significant reduction in lumbar pain with a back brace"; had "a number of negative tests"; and had "relatively normal" activities of daily living. (R. 43). *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (instructing ALJs to consider a claimant's activities of daily living and non-treatment measures like a brace used to reduce pain). Claimant does not argue that the ALJ erred in citing any of these facts.

Claimant also questions the ALJ on another front by raising a series of arguments that the ALJ failed to properly develop the record. While it is correct that an ALJ must make a reasonable effort to ensure that the record contains sufficient information to assess the claimant's RFC, *Martin v. Astrue*, 345 Fed.Appx. 197, 201 (7th Cir. 2009), the ALJ in this case has done so. Returning again to the December 2014 MRI, Claimant states that "it is unclear what a professional would conclude" about the functional restrictions that should be inferred from the MRI. To the contrary, the record plainly indicates what a professional would conclude because state-agency expert Dr. Barnes addressed the MRI results. Dr. Barnes noted in her April 29, 2015 report that Claimant had an orthopedic consultation on March 10, 2015 during which the results of the MRI were discussed. (R. 111, 891). She further referenced Claimant's "L2-3

14

stenosis and L5-S1 spondylolisthesis with bilateral foraminal stenosis" to find that Claimant's pain allegations did not prevent him from carrying out a reduced range of light work. Dr. Barnes specifically stated: "I have reviewed all of the file evidence, considered the medical and functional information, and find the assessment and RFC in file to be an accurate representation" of Claimant's condition.[7] (R. 112).

Claimant next argues that the ALJ should have ordered an additional consultative exam. The regulations permit an ALJ to order an independent medical examination as a means of developing a record that does not give the ALJ an adequate view of the claimant's condition. 20 C.F.R. § 404.1512(b)(2); *see also Webb v. Berryhill*, 294 F.Supp.3d 824, 881 (D.S.D. 2018). Consultative exams assist an ALJ in evaluating a claimant's limitations and clarifying uncertainties that may exist in the current record. *See* 20 C.F.R. § 404.1519a(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a diagnosis or prognosis necessary for decision."). An ALJ has broad latitude in deciding if a consultative exam is required. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).

The ALJ – in fact – used his authority to develop the record in this case by ordering a consultative exam of Claimant by Dr. James Elmes. Dr. Elmes issued a report on October 15, 2014 stating that Claimant had normal upper and lower extremity strength, normal gait, no midline neck tenderness, back spasms, or muscle atrophy. (R. 636-40). The ALJ summarized the report's findings in his decision, and Claimant concedes that he did so accurately. (R. 43). Nevertheless, Claimant attacks the ALJ's use of Dr. Elmes' report on two grounds by arguing

---

[7] Claimant also states in a perfunctory manner that the ALJ should have called an expert witness or recontacted his treating sources, claiming that without doing so "we cannot know" if the evidence supports the RFC assessment. (Dckt. # 26 at p. 14). Dr. Nguyen and Dr. Barnes, however, assessed Claimant's RFC from the existing record and Claimant does not challenge their findings. Thus, a review of the record does not demonstrate that an additional expert review was required.

that (1) the report improperly omitted an RFC assessment, and (2) the ALJ failed to consider evidence that was attached to Dr. Elmes' report. The Court disagrees that the record supports either of these claims.

It is true that Dr. Elmes' report did not provide an assessment of Claimant's exertional abilities such as sitting, standing, kneeling, or climbing. Claimant has not shown, however, why that warrants an additional consultative exam. Consultative reports very frequently do not describe a claimant's exertional or non-exertional abilities. Nor are such findings necessarily required for an ALJ to have a fully-developed record that permits him or her to assess a claimant's RFC. *See Thomas*, 745 F.3d at 808 ("Illinois has never required such [medical] statements, and the completeness of an administrative record is generally committed to the ALJ's discretion."); *see also Myers v. Berryhill*, --- F.Supp.3d ---, No. 4:18-C-614, 2019 WL 398672, at *1 (M.D.Pa. Jan. 31, 2019) ("The ALJ is expressly not required to seek outside assistance.") (internal quotes and citation omitted); *Manasco v. Colvin*, No. 6:13-C-394, 2014 WL 1513173, at *3 (N.D.Ala. April 14, 2014) ("Developing a full and fair record . . . does not require an ALJ to secure a medical source opinion regarding the claimant's RFC.").

Claimant's second objection to the report concerns Dr. Elmes' raw data about Claimant's range of motion. Dr. Elmes attached sheets to his report that described the degree to which Claimant could move his neck, spine, arms, and legs. He noted, for example, that Claimant showed cervical rotation of 60 degrees out of a normal range of 80 degrees and found that his lumbar flexion was limited to 70 degrees out of 90. (R. 655-56). The ALJ did not address these figures, opting instead to cite Dr. Elmes' summary of them. (R. 639, "It should be noted that all ranges of motion are normal except for those circled on the range of motion sheet."). Claimant argues that without seeking expert review of Dr. Elmes' raw data the ALJ "opted to shoehorn the

16

results into the framework of his assessed RFC." (Dckt. #26 at p. 13). However, Claimant once again fails to note that both Dr. Nguyen and Dr. Barnes considered Dr. Elmes' report as part of their own RFC assessment. (R. 94, 112). That presumably involved everything that Dr. Elmes submitted as part of the report including the specific findings about Claimant's ability to move his neck and lumbar spine. By failing to claim that the state-agency doctors misinterpreted Dr. Elmes' report, Claimant has made no showing that a new consultative exam is necessary to assess his RFC.

Finally, Claimant states in broad terms that the ALJ erred because he should have found that the Claimant was limited to sedentary work. Had the ALJ made this finding, Claimant states that he would have been deemed disabled under Rule 201.14 of the Medical-Vocational Guidelines because he was 50 years of age on his alleged onset date.[8] *See* 20 C.F.R. Pt. 404, Subpart P, Appx. 2. The Court agrees that Claimant would be found disabled under the Guidelines *if* he were limited to sedentary work. However, Claimant has not cited any evidence to support the proposition that he was limited to sedentary work. Instead, Claimant merely asserts that it is unclear whether a more developed record "would prompt a professional to opine that Plaintiff's condition limits him to sedentary work." (Dckt. # 26 at pp. 14-15). For all the reasons discussed above, however, Claimant has not demonstrated that the ALJ failed to develop the record properly or that the state-agency experts' RFC assessment was incorrect. To reiterate, Claimant bears the burden of proof from Step 1 through Step 4 of the sequential evaluation process. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Without citing any part of the record to support a claim that he should have been assessed with a sedentary RFC, Claimant has not carried that burden.

---

[8] The Medical-Vocational Guidelines, or "Grid," can be used at Step 5 "to determine whether an individual of the claimant's age, education, and work experience could engage in substantial gainful activity." *Ortiz v. Chater*, 986 F.Supp. 479, 486 (N.D.Ill. 1997).

The Court therefore concludes that remand is not required in this case. Even if Claimant could only occasionally kneel and never climb, as the state-agency doctors stated, he could still carry out the jobs that the ALJ identified at Step 5. Claimant does not argue that he was more limited than the state-agency doctors said he was and does not cite any evidence that the ALJ overlooked.

IV. **CONCLUSION**

For these reasons, Claimant's motion for summary judgment [16] is denied and the Commissioner's motion for summary judgment [27] is granted. It is so ordered.

ENTER:

_____

Hon. Jeffrey Cummings

DATE: May 28, 2019.  United States Magistrate Judge